## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**DAN EIDEN, INC.,**
a Michigan corporation,

        Plaintiff

                                      Case No.: 2:15-cv-14053-BAF-MJH
v.                                     Hon. Bernard A. Friedman

**F&M TOOL & PLASTICS, INC.,**
a Massachusetts corporation,

        Defendant.

_____/

## <u>PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

# TABLE OF CONTENTS

Statement of Issues Presented .................................................................. ii

Controlling Authority ............................................................................. iii

I.  INTRODUCTION ............................................................................1

II.  STATEMENT OF FACTS ...............................................................2

III.  LAW & ARGUMENT ......................................................................6

    A.  The Public Interest Factors Weigh against Transferring the Case...............6

    B.  The Forum Selection Clause is Unenforceable...........................................10

    C.  Private Interests Support Keeping the Case in Michigan. .........................11

    D.  The Michigan Sales Representative Act Applies to this Action.................13

IV.  CONCLUSION AND RELIEF REQUESTED.............................................16

**Statement of Issues Presented**

1.  Plaintiff is a Michigan based sales representative for Defendant manufacturer. An amendment to the parties' agreement injected a clause selecting Massachusetts as the forum for disputes. But the Michigan Sales Representative Act sets forth a fundamental Michigan public policy protecting sales representatives in these situations while Massachusetts has no public interest in this controversy. Should the case be transferred under 28 U.S.C. § 1404(a)?

    Plaintiff answers: No

    Defendant answers: Yes

2.  Is the forum selection clause enforceable?

    Plaintiff answers: No

    Defendant answers: Yes

3.  Does the Michigan Sales Representative Act apply?

    Plaintiff answers: Yes

    Defendant answers: No

## Controlling Authority

28 U.S.C. §1404(a)

Mich. Comp. Laws § 600.2961

*Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568 (U.S. 2013).

## I.    INTRODUCTION

Plaintiff Dan Eiden, Inc. ("Eiden") helped launch Defendant F&M's Bella brand of plastic storage bins and served as the primary sales representative for the brand. As a result of Eiden's work, F&M made huge sales to national retailers like like Meijer, Kmart, and Target. Eiden made these sales on a commission basis, meaning that Eiden completely funded its own sales efforts and only received compensation if it made a sale. After Eiden spent years and thousands of dollars and years of while taking the risk of no compensating revenue so as to secure these sales, F&M fired Eiden to avoid paying the agreed future commission stream.

This is a Michigan matter. Eiden is a Michigan company. F&M has a Michigan manufacturing facility. The contract at issue was signed in Michigan.  To protect sales representatives like Eiden, the Michigan Legislature enacted a statute that specifically addressed the perennial problem of a principal refusing to pay a representative after the representative has served its function by successfully procuring sales. This is not a standard occurrence for the legislature and there are no similar protective statutes for other professions like attorneys or bankers. As a matter of public policy, the State of Michigan has decided to cloak its sales representatives with a mantle of statutory protection.

In an effort to avoid the consequences of that protection, F&M has tried to move this case outside of Michigan—even though F&M specifically hired a

1

Michigan sales representative to spearhead its sales efforts. This is not permissible, as the applicable case law makes clear.

Eiden at this point asks only that his litigation be handled in and under the law of the forum where its sales activity took place, where the contract was signed, where Eiden's business is centered, and where F&M has a place of business and a targeted strategy. Eiden's wish is echoed by pertinent case law and by the public policy of the State of Michigan. Transferring this case would contravene the clear public policy of the State.

## II.    STATEMENT OF FACTS

Plaintiff Eiden is an independent manufacturer's sales representative based in Howell, Michigan and specializing in representing manufacturers of consumer goods for sale to regional and national retailers. [Doc. #1, Complaint, ¶ 2.] Currently, Eiden employs Dan Eiden, his wife, and a third employee, all of whom work and reside within this district. [Exhibit 2, Eiden Affidavit, ¶ 9.]

Defendant F&M is a Massachusetts corporation that conducts business from its headquarters located in Leominster, Massachusetts. [Complaint, ¶ 3.] F&M is a very large company employing between 50 and 200 people. [Exhibit 4[1].] Besides its

---

[1]  https://www.linkedin.com/company/f&m-tool-and-plastics-inc  as accessed on February 15, 2016.

headquarters, it operates four warehouse and production facilities, including one in Michigan. [Exhibit 5[2].]

F&M currently manufactures plastic storage containers and "totes" under the brand name "Bella Storage Solutions." [Complaint, ¶ 8.] F&M was a traditional tool and plastics company when Eiden introduced it to the home plastic storage market; this market segment has now become a major focus of F&M's business. [Complaint, ¶ 7; Ex. 5.] In addition to the Bella line, F&M is a third-party molder for other major plastics company and markets a "smartware" and "petware" line of products. [Ex. 5.]

Since the launch of the Bella line in 2008, Eiden was F&M's principal sales agent and was recognized by F&M as its "National Key Accounts" representative. [Complaint, ¶¶ 9, 15.] Eiden and F&M's relationship was initially governed by a Sales Representation agreement dated September 16, 2008, attached hereto as Exhibit 1.

Following that agreement, Eiden secured contracts for F&M with customers including Kmart (Sears Holdings), Meijer, Menards, Shopko, True Value, Target, Walgreens, and Marc's. [Complaint, ¶¶ 1, 10.] F&M, having found early success through Eiden's efforts, sought to keep Eiden's wings clipped. F&M insisted that Eiden decline to represent other non-competitive products and required Eiden to hire

---

[2] http://www.fmtool.com/about-fmtool.php as accessed on February 15, 2016.

3

two additional employees. [Exhibit 2, Eiden Declaration ¶ 4.] Consequently, F&M became Eiden's core business, representing 77% of the company's revenue at the time of termination. [Ex. 2, ¶ 5.]

With Eiden firmly dependent on F&M, F&M demanded a change in the parties' agreement. Another sales representative agreement, dated June 27, 2013, was signed by the parties. [Exhibit 1 to Complaint.] This agreement inserted two provisions relevant to the motion: a clause purporting to both select Massachusetts as the forum for disputes and as the applicable law. At the time, the parties both knew that losing the F&M account would result in financial ruin for Eiden. [Ex. 2, ¶¶ 6-7.]

After the 2013 agreement was signed, Eiden continued to make huge sales for F&M, growing sales to existing customers and lining up new business for F&M. [Complaint, ¶ 15.] Despite Eiden's sales accomplishments and the enormous success of its Bella line, further changes were afoot at F&M. In 2014, F&M began cutting Eiden's commissions, undermining his role within the company, and proposing various other revisions to the parties' relationship. [Complaint, ¶ 17.] When Eiden would not agree to the addition of overly restrictive covenants and deep commission cuts, F&M sought to curtail Eiden's responsibilities to avoid payment of commissions he would be owed. [Complaint, ¶ 18.]

4

On August 7, 2015, Eiden's fear that F&M would not honor its agreement was borne out. F&M terminated Eiden by letter, effective September 7, 2015. [Exhibit 2 to Complaint.] In its termination letter, F&M declared that it would only pay commissions "between now and September 7th." [*Id*.] F&M made clear that it had no intention of paying commissions for sales procured by Eiden unless an actual order was received prior to the termination.

Because of the lead time and the recurring nature of sales, Eiden has procured sales for F&M to customers that, at the time of termination, had not yet been formalized by a purchase order. [Complaint, ¶¶ 21, 23, 24.] For example, in May 2015, Eiden procured an award letter for F&M to sell goods to ALDI, Inc. which would not be displayed and sold by ALDI until January 2016. [Complaint, ¶ 22.] As a result, a formal purchase order had not been issued by ALDI at the time of termination. [*Id.*] F&M's termination letter made clear that Eiden would not be receiving post-termination commissions.

Eiden filed the instant action asserting claims for breach of contract, violation of the Michigan Sales Representative Commissions Act, Mich. Comp. Laws § 600.2961, and seeking a declaratory judgment as to F&M's obligation to pay post-termination commissions.

### III.   LAW & ARGUMENT

F&M's motion is based entirely on a false notion: that the forum selection clause requires this suit to proceed in the Massachusetts District court and not in the Michigan's Eastern District[3]. A forum selection clause does not remove this Court's discretion in deciding a transfer motion. Rather, the Court should concern itself primarily with public interests and not the litigants' private interests. These public interests all militate against transfer. Moreover, the forum selection clause is unenforceable because it contravenes a fundamental Michigan public policy. The Court may therefore consider private interest factors. F&M completely fails to address these private factors because they overwhelmingly support non-transfer.

### A.   The Public Interest Factors Weigh against Transferring the Case.

---

[3] F&M relies on the forum selection clause to request an outright dismissal under Rule 12(b)(6) or transfer under 28 U.S.C. § 1404(a). But the Supreme Court settled which mechanism courts should use in these circumstances: "the appropriate way to enforce a forum selection clause" is by transfer under § 1404(a). *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tx*, 134 S.Ct. 568, 581 (2013); *see also Lawson Steel, Inc. v. All State Diversified Prods.*, No. 1:10-cv-1750, 2010 U.S. Dist. LEXIS 131494, at *15 (N.D. Ohio Nov. 23, 2010) (holding that "Rule 12(b)(6) motion to dismiss is not an appropriate mechanism for a venue challenge based on a forum selection clause); *McCormick v. Maquet Cardiovascular US Sales, LLC*, No. 2-15-0821, 2015 U.S. Dist. LEXIS 142353, at *2 (M.D. Tenn. Oct. 20, 2015) (treating 12(b)(6) motion to dismiss or, in the alternative, motion to transfer as only a motion to transfer and noting Atlantic Marine preference for transfer).

The decision to grant or deny a §1404(a) motion lies in the discretion of the district court. *Phelps v. McClellan,* 30 F.3d 658, 663 (6th Cir. 1994). In exercising that discretion, the district court should assess "(1) whether the action could have been brought in the proposed transferee district, (2) whether a transfer would promote the interests of justice, and (3) whether a transfer would serve the parties' and witnesses' convenience." *IFL Group, Inc. v. World Wide Flight Servs., Inc*., 306 F. Supp. 2d 709, 712, (E.D. Mich. 2004).

If the forum selection clause is valid and enforceable, this analysis is changed in two relevant ways. *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 581 (U.S. 2013). First, "the plaintiff's choice of forum merits no weight." *Id.* Second, the court "should not consider arguments about the parties' private interests" and "may consider arguments about public-interest factors only." *Id.* at 582. Public interest factors include the "local interest in having localized controversies decided at home,…the advantage of holding the trial in a forum that is at home with the state law that must govern the case," and the relative congestion of the two forums. *Delta Alcohol Distribs. v. Anheuser-Busch Int'l, Inc.*, 28 F. Supp. 3d 682, 691 (E.D. Mich. 2014).

This case presents a controversy that the Michigan legislature has specifically defined as a Michigan controversy—the payment of commissions to a Michigan sales representative. This court has previously recognized that the Michigan Sales

Representative Act was intended to serve a "fundamental policy" of Michigan law: "to ensure that sales representatives in Michigan are paid the full commissions to which they are entitled, especially when those commissions fall due after the termination of the employment relationship." *Howting-Robinson Assocs. v. Bryan Custom Plastics*, 65 F. Supp. 2d 610, 613 (E.D. Mich. 1999); see also *Linsell v. Applied Handling, Inc*., 266 Mich. App. 1, 14 (2005) (MSRA enacted with "[l]egislature's expressed public policy to provide significant protections for a salesperson to collect his or her commissions.") Thus, the Michigan Legislature specifically expressed its intent to make sales representatives *different* and more protected than a party to a standard contractual relationship.

The Michigan Legislature was stirred to action by the *very conduct* that F&M is displaying. The Legislative Analysis accompanying the bill confirms that the MSRA was intended to address the difficulty sales representatives faced recovering earned commissions after termination. Senate Legislative Analysis, SB 717, April 30, 1992, quoted in *Walters v. Bloomfield Hills Furniture*, 228 Mich. App. 160, 164-165 (1998). The Legislative Analysis identified two aspects of the problem. Principals sometimes simply withheld commissions to force the representative "either to accept distress settlements…or to forgo the remuneration completely." *Id.* Additionally, sales representative were frequently required to "sue in the domicile of the principal, and bear the added costs of attending depositions and trial in another

8

state." *Id.* F&M terminated Eiden and is withholding commissions. Now F&M insists that Eiden—in a distressed financial position of F&M's making—pursue justice in a distant jurisdiction. Enforcing the forum selection clause would specifically undermine an expressed fundamental policy of this State.

Massachusetts, on the other hand, has no local interest in the dispute. The Massachusetts Sales Representative Act would seemingly not apply because Eiden was primarily soliciting sales *outside* of Massachusetts. *See* Mass Gen Laws Ch. 104 § 7 (act applies to sales representative "who contracts with a principal to solicit wholesale orders in the commonwealth"). Thus, the Massachusetts legislature has expressed that its public policy is not concerned with sales representatives, like Eiden, working *outside* the commonwealth. *Id.*

Furthermore, the MSRA, and not Massachusetts law, should apply to this dispute despite the presence of a choice-of-law provision. *Howting-Robinson Assocs. v. Bryan Custom Plastics*, 65 F. Supp. 2d 610, 613 (E.D. Mich. 1999). In *Howting-Robinson*, this Court declined to apply Ohio law despite an Ohio choice-of-law provision in the parties' sales representative agreement because Ohio law, unlike the MSRA, did not protect post-termination commissions. In the instant action, the same is true of Massachusetts law. This Court has adjudicated numerous disputes arising under the MSRA and is significantly more familiar with it than the Massachusetts court would be.

Lastly, the Eastern District of Michigan is far less congested than the District Court for Massachusetts. For the 12 month period ending March 31, 2015 (the most recent statistics available), the Massachusetts District Court had 7,170 civil cases pending being handled by 18 judges—an astounding 398 cases per judge. [Ex. 3.] During the same period, the 23 judges in the Eastern District of Michigan had 5,256 civil cases pending or 229 cases per judge.

**B.      The Forum Selection Clause is Unenforceable.**

The relative interests of Michigan and Massachusetts alone counsels against transfer. But there is an even more compelling reason not to transfer: the forum selection clause is unenforceable because it would deprive Eiden of statutory remedies and contravene public policy expressed by the Michigan Legislature.

The enforceability of forum selection clauses is governed by federal law in diversity cases. *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). In considering the enforceability of a forum selection clause, the court should consider (1) whether it was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit, or (3) whether the designated forum would be seriously inconvenient such that requiring the plaintiff to bring the suit there would be unjust." *Id.* That is, a forum selection clause should not be enforced if the law of the chosen forum is such that a risk exists that the plaintiff will be denied a remedy or will be treated unfairly. *Id.* at 829. The

Supreme Court has indicated that a forum selection clause should be held against public policy if it could operate in tandem with a choice-of-law clause "as a prospective waiver of a party's rights to pursue statutory remedies." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 615, 637 n. 19 (1995).

This Court previously recognized that the Michigan Sales Representative Act ("MSRA") represents a "fundamental policy" of Michigan and that the MSRA should apply in cases like these despite the presence of a choice-of-law provision. *Howting-Robinson Assocs. v. Bryan Custom Plastics*, 65 F. Supp. 2d 610, 613 (E.D. Mich. 1999). But transferring the case creates a substantial risk that a Massachusetts court would fail to recognize the important Michigan public policy interests and decline to apply the MSRA. In that case, Eiden would have effectively lost significant statutory remedies, particularly because Massachusetts' analogous law may not apply in this situation. *See* Mass Gen Laws Ch. 104 § 7 (act applies to sales representative "who contracts with a principal to solicit wholesale orders in the commonwealth").

## C.    Private Interests Support Keeping the Case in Michigan.

Because the forum selection clause here is unenforceable, it is appropriate for this Court to consider private factors. All private factors support Michigan as the appropriate forum. The private interest factors include: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the location of relevant documents

and relative ease of access to sources of proof; (4) the relative means of the parties;

and (5) the weight accorded the plaintiff's choice of forum. *See Overland, Inc. v.*

*Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000).

First, witness convenience is one of the most important factors in determining

whether to grant a motion to change venue under § 1404(a).  *Id.*  In the convenience

to witnesses' analysis, the moving party has the burden to proffer sufficient details

about the witnesses and their testimony so that the court can make assessments about

the witnesses' materiality and convenience. *Rinks v. Hocking*, No. 1:10-cv-1102,

2011 U.S. Dist. LEXIS 15798, at *8 (W.D. Mich. Feb. 16, 2011). Absent that

showing, the factor resolves in the non-movant's favor. *Id.* In this case, F&M fails

to identify *any* potential witnesses for whom Massachusetts would be more

convenient. Eiden's Complaint, meanwhile, points to several key witnesses located

in or nearer to Michigan than to Massachusetts. [Complaint ¶¶ 1, 10.] Other than the

parties, the primary witnesses will likely be the representatives of customers of F&M

procured by Defendant. The witnesses are primarily based in the upper Midwest—

Michigan, Illinois, Wisconsin, and Minnesota. [Ex. 2, ¶ 10.] These witnesses and the

documents in their possession are all more conveniently located to Michigan than to

Massachusetts.

Because of the relative means of the parties, transferring the case to

Massachusetts would create a prejudicial disadvantage for Eiden. At the time that

12

F&M terminated the contract, commissions from the sale of its goods represented approximately 77% of Eiden's revenue. [Ex. 2, ¶ 5.] Eiden currently employs only three people—a number that includes Dan Eiden and his wife. Because of its size and financial resources, Eiden would have significant difficulty even pursuing this case if it were transferred. Against this small family business comes F&M, a large company with over 50 employees and four production facilities, including one in Michigan. [Exhibit 4.] Given the relative size and financial condition of the parties, a transfer to Massachusetts would be unfair.

Moreover, absent an enforceable forum selection clause, a plaintiff's choice of forum should be respected. Eiden chose this venue and did not do so arbitrarily. The Eastern District of Michigan was selected because it is Eiden's home forum and the nerve center of its business. Eiden has its office in Michigan and its employees work here.  For at least these reasons, the Eastern District of Michigan is the proper forum for this matter.  *Hertz Corp. v. Friend,* 559 U.S. 77; 130 S. Ct. 1181, 1193 (2010).

**D.     The Michigan Sales Representative Act Applies to this Action.**

For its final argument, F&M asserts that Massachusetts law applies to this matter and that Eiden's claim under the MSRA must be dismissed. But, as demonstrated above, this Court should apply Michigan law because the MSRA

13

evinces a fundamental policy of the state of Michigan. *See Howting-Robinson, supra* at 613.

F&M incorrectly relies on *Atlantic Marine* in support of its assertion of Massachusetts law. But *Atlantic Marine* does not support the application of Massachusetts law; rather, *Atlantic Marine* merely stands for the proposition that when a forum selection clause exists "transfer of venue will not carry with it the original venue's choice-of-law rules." *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 582 (U.S. 2013). This distinction is without a difference in the case at bar because Massachusetts applies the same Second Restatement choice-of-law rules as Michigan. *See Hodas v. Morin*, 442 Mass. 544, 549 (2004) relying upon Restatement (Second) of Conflict of Laws § 187 (1971) and *Howting-Robinson, supra* at 612-613, relying upon Restatement (Second) of Conflict of Laws § 187 (1971).

Furthermore, the MSRA itself renders the contractual choice-of-law provision void. Under the act, "[a] provision in a contract between a principal and a sales representative purporting to waive any right under this section is void." MCL 600.2961(8). The choice-of-law provision is void because it selected law which would deny Eiden the right to receive payment of commissions coming due after termination. The Michigan Court of Appeals considered a similar situation in *Walters v. Bloomfield Hills Furniture*, 228 Mich. App. 160 (1998). In *Walters*, the

14

principal and representative had an oral contract that entitled the plaintiff to payment upon delivery of furniture. *Id.* at 165. A subsequent letter agreement provided that the plaintiff was not entitled to commissions if delivery was made after termination. *Id.* at 165-166. Because the letter agreement effectively precluded a statutory right to post-termination commissions, the revision was held to be void. *Id.* at 166. Eiden and F&M had an agreement that would have entitled Eiden to post-termination commissions—the September 16, 2008 agreement (Exhibit 1 hereto). The choice-of-law provision, by taking the matter outside of Michigan law, cut off this right and is thus void under the MSRA. MCL 600.2961(8). Application of the choice-of-law provision would "violate Michigan public policy" because Massachusetts law—and thus the parties' agreement—fails to offer the protections of the MSRA. *See also Volunteer Energy Servs. v. Option Energy, LLC*, No. 1:11-cv-554, 2012 U.S. Dist. LEXIS 115170, at *26 (W.D. Mich. Aug. 16, 2012). As the court in *Howting-Robinson* observed, "the parties have selected, through their choice of law provision, a jurisdiction in which there is a substantial erosion of the quality of protection that the [MSRA] would otherwise provide." *Howting-Robinson, supra* at 613. That choice of law should be disregarded in order to protect Michigan's substantial interests in this dispute.

Thus, even if the case is transferred, this Court should decline to dismiss the MSRA claim and should affirmatively hold that Michigan law applies to those claims.

### IV.    CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Plaintiff Dan Eiden, Inc. requests that this Court deny Plaintiff's motion to dismiss and to transfer the case. If the Court elects to transfer the case, Plaintiff requests that the order specifically state that the Michigan Sales Representative Act applies in order to protect Michigan's significant public interest in this matter.

Dated:  February 16, 2016          **CARLSON, GASKEY & OLDS, P.C.**

/s/ Brian B. Brown
Steven Susser (P52940)
Brian B. Brown (P62733)
Carlson Gaskey & Olds, P.C.
400 W. Maple, Suite 350
Birmingham, Michigan  48009
(248) 988-8360
ssusser@cgolaw.com
bbrown@cgolaw.com

16

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 16, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

/s/ Brian B. Brown
Brian B. Brown (P62733)
Carlson Gaskey & Olds, P.C.
400 W. Maple, Suite 350
Birmingham, Michigan  48009
(248) 988-8360
bbrown@cgolaw.com

Dated: February 16, 2016